### SLOAN v. HATHCOAT.

4-5696                                134 S. W. 2d 873

Opinion delivered December 18, 1939.

H. L. Ponder and H. L. Ponder, Jr., for appellant. Richardson & Richardson, for appellee.

GRIFFIN SMITH, C. J. Appellee was injured as the result of a fall in appellants' gin. He alleged negligent construction of equipment.

Appellants contend that appellee accidentally lost his balance while manipulating a lever. The lever, spoken of as a "T" was attached to an iron pipe approximately four feet long. The other end of this pipe had been shaped to fit over the equare stem of a shaft. The shaft, in turn, operated certain equipment, referred to as a valve. The valve as originally installed did not include the iron pipe. This extension was made as a matter of utility. The pipe rested upon two timbers six or eight inches wide, spaced some distance apart, with the "T" end supported by an upright, contiguous to which was a narrow platform for use of those who from time to time were directed to manipulate the "T" in conjunction with a helper who would reach his hands into the cotton conveyor within which the valve was placed, the purpose being to relieve an interior "packed" or congested condition which prevented distribution of cotton into compartments holding about two bales each. The platform from which the "T" was operated was 17 to 20 feet above the ground floor.

Appellee's testimony is that while turning the "T" under direction of the ginner (and while the latter was assisting in unclogging the valve) the iron rod became disengaged from the valve shaft stem, allowing the "T"-end to drop suddenly, causing the fall.

Appellee, while operating the valve, was sitting behind the "T". He admits that he did not and could not see the opposite end. On cross-examination he testified he "thought" the rod came loose. The question was asked: "Because the 'T' you were holding went down— that is what makes you think it slipped loose up there, isn't it?" The answer was: "It makes me think [it] came loose".

Appellants insist this is a mere conclusion drawn from the fact of the fall; that appellee, with his back to the valve and rod connection, could not know what occurred behind him.

If answers responsive to the cross-examination were the only testimony on the issue, we would agree with appellants' view. But this is not the case. Appellee's posture was such that the "T" could be seen and its motions felt. It is possible that when pressure was removed from the valve by the ginner's hand manipulations one end of the "T" upon which appellee was exerting pressure turned suddenly, and that the fall was caused by this unexpected action.

There is testimony on behalf of appellants that connection of the rod with the valve shaft stem was not disturbed; that the fitting was so close as to require force—such as driving with a hammer—to effect separation, and that subsequent to appellee's injury (September 29, 1938) no repairs or changes were made because disunion had not occurred. Even if we should say this was probably true, it was still a matter for the jury's determination unless appellee's testimony stated a physical impossibility or an absurdity no reasonable mind would accept.

Effect of appellee's explanation of the transaction is to say that the end of the iron pipe in front of him to which the "T" was connected suddenly went down. If this statement is true in respect of the pipe (as distinguished from the "T"), then unity of the pipe with the valve shaft stem must have been destroyed; otherwise the "front end" of the pipe could not have functioned as appellee says it did.

We conclude, therefore, that on this issue there was a question of fact. At appellants' request the jury was permitted to visit the premises and to see how the equipment operated.

It is insisted that the judgment for $3,750 is excessive. Appellee was confined to his bed 12 or 14 days, and thereafter was under treatment of a physician. X-rays were taken three months after the fall, disclosing injury to a vertebra. There is no testimony that the injury disclosed by roentgenology was caused by the fall, although that inference was drawn by the doctor

in reliance upon the patient's disclosures. Medical bill was $65. Appellee was unconscious two or three hours. Two ribs were broken and lungs injured. There was a cut on the "thick part of the left temple" and damage to the back part of the neck and shoulders, with bleeding at the nose and from the injured lungs. Another physician who saw appellee the day following the fall testified the patient was "stunned, evidently from a brain concussion; tenderness on moving the neck and dorsal, and to the chest." There was other testimony relating to the nature and extent of injury.

Prior to employment by appellants, appellee had worked as a truck driver with weekly earnings of $10 or $12. During the ginning season he earned $15 to $20 a week. Three months after receiving his injury appellee was working at a salary of $7.40 a week. In February, 1939, he secured employment as clerk in a store at $10 a week.

The fact that appellee was able to resume work within a comparatively short period of time after receiving his injuries, and at a wage almost equal that received prior to his employment at the gin, contradicts testimony that "possibly," or "probably," the injuries were permanent.

We think $2,000 is the largest sum justified by the evidence. If within two weeks appellee shall have entered a remittitur for $1,750, the judgment will be affirmed. Otherwise it will be reversed on the ground that passion and prejudice influenced the verdict by inclusion of a speculative sum for future disability not sustained by the record. In the event a remittitur is not entered the cause will be remanded for a new trial.

## On Rehearing

Per Curiam. December 18, 1939, judgment in favor of appellee was affirmed on condition. The condition that remittitur be entered was complied with and judgment for $2,000 was affirmed.

January 29 the D. F. Jones Construction Company appealed from a judgment of the Lawrence circuit court,

causes Nos. 5758 and 5839 having been consolidated. In cause No. 5758 E. G. Fooks, appellee, had procured judgment for $5,000 to compensate personal injuries. This judgment was reversed for the reasons set out in the opinion.

In a concurring opinion in the Fooks Case it was shown that C. F. Grigsby and W. N. Fallis served as jurors in the case of *Earl Sloan et al.* v. *Paul Hathcoat,* Hathcoat having been plaintiff below.

On its own motion this court recalled the mandate in the Hathcoat Case and directed the appellee to show cause why the judgment should not be set aside and the cause remanded for a new trial.

Appellee's response admits that Grigsby and Fallis served on the jury that returned a verdict in his favor. The contention is made, however, that Grigsby's conversation with Fallis (as reflected by the concurring opinion of January 29) occurred two days after the Hathcoat case had been tried.

The fact remains that Grigsby and Fallis were on the jury.

In view of the circumstances as reflected by the opinion in cause No. 5758 the judgment obtained by Hathcoat should be reversed and a new trial had. It is so ordered.