D. F. Jones Construction Company, Inc., v. Fooks.

4-5758 and 4-5839 (consolidated) 136 S. W. 2d 487

Opinion delivered January 29, 1940.

*Fred A. Isgrig, W. P. Smith* and *Harry C. Robin-son,* for appellant.

*Richardson & Richardson,* for appellee.

HUMPHREYS, J. Cases numbers 5758 and 5839, bearing the same style and pending in this court, are consolidated for the reason that case number 5839 is a continuation of case number 5758. Case number 5758 is an appeal from a judgment for $5,000 in favor of appellee against appellant in the circuit court of Lawrence county, eastern district, for damages on account of personal injuries received by appellee through the alleged negligence of C. R. Cutrell who was appellant's employee and foreman, in backing a large caterpillar used in construction work on highway 39, between Rector and Piggott, so as to catch appellee's left foot between the cleats of the caterpillar and a crosstie which appellee and a colaborer were engaged in pushing or shoving under said cleats so as to prevent the caterpillar from spinning when power was applied, mashing off his "big toe" and mashing three others so that they had to be amputated.

In this particular case a reversal of the judgment is sought upon two grounds, namely:

(1) That the court erred in giving its oral instruction No. 10 over the objections and exceptions of the appellant, and

(2) The verdict was grossly excessive and was the result of prejudice or passion engendered by the remarks of counsel for appellee in his closing argument to the jury.

Case number 5839 is in effect a second appeal from the judgment rendered in case number 5758 on the ground of newly discovered evidence after the first motion for a new trial in case number 5758 was filed and overruled.

The second motion for a new trial alleged that one Clyde Robins did attempt and did talk to a number of the jurors who served in the case, and did offer said jurors a bribe to return a verdict for the appellee; that the attempt to fix the jury in this cause apparently resulted in the jury being prejudiced in favor of appellee and destroyed the verity of the verdict; that the newly discovered evidence was not discovered by appellant for some time after the case had been tried and could not be brought to the court's attention previous to the time

the motion was filed; that the conduct of the parties on behalf of the appellee in this case constituted a fraud on the court and a fraud on appellant and unless the verdict of the jury rendered thereon be set aside by the court, the rights of this appellant will be destroyed. Wherefore, appellant moves the court to set aside the verdict of the jury herein and vacate the judgment on said verdict and grant appellant a new trial.

Appellee filed a response denying all the allegations in the motion and praying that the motion for a new trial be denied.

The motion and response thereto were supported by affidavits attached and the case was heard upon the attached affidavits which resulted in the following finding by the court:

"I don't think, gentlemen, that there is sufficient evidence here to cause any reflection on the verdict of the jury. The attorneys cannot be criticized for trying to determine the kind and character of men that are going to serve on the juries where they have cases to try. I had to make investigations, I know; and I think all the attorneys do that, they try to find the prejudices, feelings and everything towards the parties involved in criminal and civil cases. I find no proof here to show the court substantially where the court could find that this jury has been corrupted. Let the motion for new trial be overruled."

The affidavit of Clyde Robins was to the effect that he offered certain jurors who served upon the jury in the case a bribe to return a verdict for the appellee. He was corroborated by two members of the regular jury panel who sat in the case to the extent that he had approached and attempted to bribe them to return a verdict for appellee. Outside of this corroboration practically every statement made by Clyde Robins in his affidavit was contradicted and it was shown that he was not worthy of belief; but, notwithstanding his bad character, it is not denied that he did approach at least two members of the jury that tried the case and offered to bribe them to return a verdict for appellee. When these jurors were chosen to sit in the case they did not disclose

to the court that Clyde Robins had approached and offered to bribe them. They do say they were not influenced, but in view of the fact that they qualified to sit upon the jury they should have disclosed to the court that an attempt had been made to bribe them and should have told the court who offered to bribe them. They qualified on the theory that they had not formed any opinion and that they had not been talked to by anyone relative to the case, whereas they admitted that Clyde Robins had not only talked with them about the case, but had offered them a bribe to decide the case in favor of appellee. The fact that they did not disclose to the court that an attempt was made to bribe them in favor of appellee is a silent circumstance that they were not impartial. After withholding the information from the court that an attempt had been made to bribe them, it was not the proper thing for them to qualify as jurors. They should have disclosed this fact to the court.

Clyde Robins, by his own admission, is a jury fixer to the extent of actually offering to buy certain jurors to return a verdict in this particular case as well as in other cases. According to his own admission, he was not only guilty of reprehensible conduct, but he violated the law which prohibits one from bribing juries or attempting to do so. As this admission was made in open court we presume he has been or will be prosecuted, as the law provides, under § 3248 of Pope's Digest.

The affidavits filed in this case on the second motion for a new trial contain many charges, denials, countercharges and denials, but from among all conflicts we find it undisputed that Clyde Robins, a self-confessed bribe giver and jury fixer, offered to bribe certain members of the jury who tried this case and that the jurors who qualified and sat in the case did not disclose the attempt to bribe them when qualifying themselves as jurors. It is true that the undisputed statements in the affidavits do not connect the appellee or his attorneys with the conduct of Clyde Robins, but the fact remains that appellee obtained a judgment against appellant for $5,000 from certain jurors whom Clyde Robins had attempted to bribe. It may be that appellee was entitled to a ver-

dict and for the amount returned, but when verdicts are obtained from juries by any litigant, it should come from a jury whose members have not been tampered with. Jury trials are vouchsafed and preserved by the constitution of the state in cases at law. The jury system is a great institution and should hold itself aloof from any and all corrupt influences. Members of juries owe it to themselves and to the great system to preserve the integrity of their verdicts. If there is substantial evidence in the case to support the verdict of the jury this court will not try a case *de novo,* but will accept and receive the verdict of the jury as final on issues involving not only property rights, but issues involving life and death. The only way to preserve the integrity of the verdicts of juries and keep the stream of justice pure is to set aside verdicts returned by juries which have been tampered with or attempted to be tampered with. It is stated in 64 C. J. 1013, in the first part of § 790, that: "An attempt of a third person to bribe jurors will result in a reversal irrespective of whether or not the attempt was successful."

We think this a most wise rule and adopt it as the rule in this state irrespective of whether such third persons are interested in the case or whether their attempts are sanctioned by the parties litigant or their attorneys. This court will not affirm a judgment on a verdict returned by a jury which has been tampered with or unduly influenced by parties litigant or by third persons. We regard this rule as necessary to inspire the confidence of the body politic in the jury system and in order to preserve the integrity of verdicts rendered by juries. The trial court should have sustained the second motion for a new trial and granted same. In view of this conclusion it is unnecessary to comment on the two alleged errors in case number 5758 urged by appellant for a reversal of the judgment as instruction number 10 may not again be given in its present form to the jury, and since the amount recovered, if any, in a new trial of the cause may not be the same as that recovered in this case.

The cause will be reversed and remanded for a new trial on account of the failure of the trial court to grant

a new trial of the cause on the second motion filed by appellant.

GRIFFIN SMITH, C. J., concurs in part.

GRIFFIN SMITH, C. J., (concurring). While I am in complete accord with the result arrived at by the majority, that result would not have been attained in the absence of a showing of substantial reason.

If Robins and others who testified by affidavit had been interlopers, the transactions described would have challenged appellate credulity. Therefore, in all probability we would have said that, because no reason was shown for the admitted acts of Robins, it would be preposterous to conclude that as a volunteer he spawned judicial corruption as an original contribution to crime.

As said in the court's opinion, the motion for a new trial does not allege that activities of persons other than Robins were responsible when influence was substituted for the thoughtful deliberations of a jury. The motion, standing alone, does not implicate appellee or either of his attorneys. But upon hearing the confessed instrumentality of bribery says he was hired by an attorney for the plaintiff.

If it be true that Robins acted for a principal, then the identity of such employer should not be enshrouded in the court's archives where only the industrious may find the testimony which forms the basis of our reversal.

An opinion should disclose all of the essential facts.

In Robins' revelations, he tells in detail how he served as intermediary—as an unbreveted liaison appointee scouting between attorney and members of the designated jury panel—carrying messages of promised reward for those who did their master's bidding and ascertaining the names of others who showed less condescension. It may be that every word Robins subscribed to in his affidavit of confession and accusation was as false as the nature from which it emanated. It is possible that malice or other sordid motive commanded his movements and inspired his conversations:—

But—the record was made in circuit court and it has been brought here on appeal. The members of this body have no alternative (and should wish no other) than to completely state the issues and reach a just conclusion.

What, then, *is* the record as to which the majority opinion is silent?

Robins stated in his affidavit that he, Ol Davis, and Roy Richardson "fixed" the jury in Fooks against the construction company. Certain members of the designated petit jury panels were named by Robins, the pertinent parts of whose affidavit are:

"Immediately after the selection of the jurors to be used [at the March, 1939] sitting of the court, I was called into conference with Roy Richardson at [his] office in Walnut Ridge and there told by him that they wanted Ol Davis and me to 'fix' the jurors of that term of court; that they, the Richardsons, would pay us $5 per juror before the trial of a case for jurors we fixed, and that if the jurors returned a verdict in their favor we would be given an additional $5 per juror.

"We were to see each juror and tell him that [the] Richardsons had the case or the cases coming up at that time on which they were to be jurors and tell them that the Richardsons would give them two per cent. of the amount they decided on by verdict; also that the Richardsons would take up the scrip issued by the county for their services, at full face value."

After saying he mentioned to certain jurors that they would be paid two per cent. of the amount of the verdicts returned and that their scrip would be bought at par, the affidavit continues:

"I also started to fix Charlie Grigsby, but Roy Richardson told me that he had already seen Grigsby and [had] fixed him, and that I did not have to see him. . . . Some of the [named] jurors sat on the Fooks case, others on cases tried before it. There were verdicts for the plaintiff as we 'fixed' it."

Robins then asserted that the Richardsons still owed him $10 per juror for those he enticed in the Fooks case, and in other cases.

This testimony was vigorously denied by Roy Richardson, who asserted that while he was prosecuting attorney a grand jury of Lawrence county indicted Robins for grand larceny and for receiving stolen property; that Robins entered a plea of guilty to receiving, and was fined $50; that Robins had often spoken slanderously of him; that someone set fire to his brother's barn; that bloodhounds followed a trail to the back door of Lee Pipe's home; that Pipe was indicted for arson, but the case was dismissed, and that O. L. Davis told him (Roy Richardson) that Robins was the person who set fire to the barn, and that Robins was in Pipe's house when the hounds trailed the culprit to the back door.

Richardson also stated that while serving as prosecuting attorney he filed information against O. L. Davis on a charge of grand larceny for the theft of some hogs, upon complaint by a Mr. Woodyard, but that Woodyard withdrew the charge and it was dismissed.

An affidavit executed by C. F. Grigsby was to the effect that he was called as a regular juror in March; that he was in Roy Richardson's office the week before court convened; that Richardson asked him if he intended to serve on the jury, etc. The following is from the affidavit:

"I told [Roy] I didn't see how I could [serve], as I was teaching school and needed the money. He insisted that I serve on the jury, and I did serve. He told me that he had some good cases coming up and that he knew I was his friend and would treat him right, and that if I knew of anyone on the jury that was mad at the Richardsons and would not give them a fair trial for me to tell him. He also told me that if I knew of anyone on the jury that I could talk to, for me to tell them that Roy wanted us to treat the Richardsons right.

"Some time during the first week of the trial I talked to W. N. Fallis and told him that Roy Richardson had a case coming up for trial the second week of court and that Roy was expecting us to treat him right in the trial. When Roy Richardson told me about these cases he said they were good cases and that I would have no

trouble rendering a verdict for him, because the evidence would show that his clients were entitled to recover.

"Some two weeks ago I saw Roy Richardson in Walnut Ridge and he told me that someone was investigating one of his cases. I did not sit on the Fooks case and don't remember whether or not I was present when the jury was selected. Roy Richardson did not promise to pay me any money, nor has he paid me anything or promised me anything since court adjourned."

Richardson denied Grigsby's statements and countered with the accusation that when Grigsby was in the office of Richardson & Richardson the week before court convened ". . . he was in a stupor from drinking intoxicating liquor. . . . He was not in any condition to talk seriously or intelligently about anything."

W. N. Fallis made a sworn statement in which he said:

"I served as a regular juror at the March term of court at Walnut Ridge. I served on several cases, but don't remember the style of any of the cases except the last case that was tried, which was the *Fooks* v. *Jones Construction Company* Case. . . . On Friday of the first week of court Charlie Grigsby (who is a second cousin of mine and who was raised with me, and who was also a regular juror) came to me and told me that Roy —meaning Roy Richardson—had a case coming up for trial the second week of the term of court and that Roy wanted us—meaning Grigsby and me—to stay in there and help him out. That was all that was said about the matter and the subject has not been discussed with me by Grigsby, Richardson, or anyone else since that time. . . . It is my understanding that Grigsby is a good friend of the Richardsons. I have seen him around the Richardsons' office, and I know that Grigsby worked for Roy Richardson when Richardson campaigned for congress. Grigsby and I served on but one or two cases together. One of these cases was the gin case, where the boy fell at the gin." [See *Sloan* v. *Hathcoat, ante,* p. 530, 134 S. W. 2d 873.]

Answering these accusations, Richardson denied any connection with the transactions or knowledge of them.

Dent Brady, a member of the jury panel, but whose name was stricken when the Fooks case was called, testified that Robins approached him, stating that he was representing the Richardsons:—"that the Richardsons had sent him out to my place and requested him to instruct me that the Richardsons had some big damage cases coming up, and as I was a regular petit juror they would give me 2 per cent. on all cases won, or $5 per case for a hung jury. I didn't decline or accept the proposition and didn't discuss the matter with anyone else."

H. C. Hutchinson testified: "The proposition submitted to me by Mr. Robins whereby I would make $200 or $300 in the March term of circuit court at Walnut Ridge was a surprise to me." He then stated that he was surprised that Robins would come to him with such a proposition and he doubted the Richardsons had sent him.

There was a great deal of other testimony, some in rebuttal and some in partial recantation and explanation. Reputation of the accusing witnesses for truth and veracity was impeached by affidavits.

If Roy Richardson and his witnesses are to be believed, the attorneys are guiltless. If Robins (who is circumstantially supported by two of the jurors) is telling the truth, the severest penalties should be adjudged against lawyer and hireling alike.

The point I am undertaking to make is that Robins' employment by Richardson is not *necessarily* sustained, but that in view of the action of the majority in reversing the judgment (a determination in which I concur) the essential part of the record should be presented, unfortunate though it may be.

Mr. Justice McHANEY and Mr. Justice BAKER join in this concurring opinion.